**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV251**

| | | |
|---|---|---|
| JOHN M. HERMAN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| WILLIAM C. LACKEY, JR., individually | ) | |
| and in his capacity as a Member of the | ) | |
| North Carolina Real Estate Commission; | ) | **ORDER** |
| HOMESERVICES OF THE CAROLINAS, | ) | |
| INC., d/b/a HOMESERVICES OF THE | ) | |
| CAROLINAS SCHOOL OF REAL | ) | |
| ESTATE, a Delaware Corporation; KEVIN | ) | |
| BROADWAY, an individual; and JOHN | ) | |
| DOES NOS. 1 THROUGH 10 INCLUSIVE, | ) | |
| identities unknown, | ) | |
|     Defendants. | ) | |
| _____ | ) | |

THIS MATTER is before the Court upon Defendant William C. Lackey, Jr.'s ("Lackey")

Motion to Dismiss Plaintiff's Amended Complaint and Defendant HomeServices of the

Carolinas, Inc.'s Motion to Dismiss Counts I, II and V of Plaintiff's Amended Complaint. After

reviewing the record and the filings in this case the Court concludes that both motions should be

GRANTED.

## BACKGROUND

Plaintiff John M. Herman ("Herman") was an instructor for prelicensing real-estate

courses at Defendant HomeServices of the Carolinas School of Real Estate ("HSC"). Lackey's

step-son, Defendant Kevin Broadway ("Broadway") took Herman's course and received a failing

grade. Broadway was therefore unable to sit for the real estate licensing examination.

Herman alleges that Broadway subsequently filed a complaint against Herman with the North Carolina Real Estate Commission ("the Commission") that contained a number of false statements about Herman's conduct during the administration of the course. At this time, Herman was scheduled to continue teaching at HSC "as evidenced by the appearance of his name upon course schedules of the Defendant HSC." Amended Complaint ¶ 20. In addition, Herman alleges that he had applied to the Commission for licensure of a new real estate school of which he planned to be the director and an instructor.

Defendant Lackey is the step-father of Broadway and is a member of the Commission. Herman alleges that Lackey induced Broadway to file the above complaint against him. Furthermore, Herman alleges that Lackey issued an ultimatum to HSC "prior to the Commissions's regular investigative process" to either fire Herman or face retributive action from the Commission. Am. Compl. ¶ 23. Herman further alleges that Lackey and HSC acted in concert in order to publicly humiliate him, cause his contract with HSC to be terminated and cause him to lose his business opportunity at the new real estate school. Herman alleges that due to this, the licensure for the new school was delayed and Herman's opportunity to contract with the new school was denied. Herman also alleges that due to a change in state law governing the licensure of real estate brokers, there had been a spike in demand for courses. Therefore, "time was of the essence" in establishing the new school. Am. Comp. ¶ 25.

Count I of the Amended Complaint alleges Deprivation of Civil Rights under 42 U.S.C. § 1983, Count II alleges Breach of Contract, Count III alleges Tortious Interference with Contract, Count IV alleges Tortious Interference with Prospective Economic Advantage, and Count V alleges Intentional Infliction of Emotional Distress. Pursuant to Rule 12(b)(6), Lackey has filed a

motion to dismiss *all* Counts and HSC has filed a motion to dismiss Counts I, II and V.

## DISCUSSION

### A.  Standard for Motions to Dismiss

A motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) should be allowed if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.  Greenhouse v. MCG Capital Corp., 392 F.3d 650, 655 (4th Cir. 2004).  A motion to dismiss should be granted if the complaint itself fails to allege the elements for a cause of action or facts sufficient to support such elements.  Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.), cert. denied, 540 U.S. 940 (2003).  Moreover, "allegations must be stated in terms that are neither vague nor conclusory."  Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 220 (4th Cir. 1994).

### B.  Plaintiff's §1983 Claim

In Count I, Herman alleges that Lackey's actions and HSC's coordinated conduct with Lackey constitutes a deprivation of his civil rights under the color of state law, specifically, "his right to contract, his property interest in his contract with HSC, his right to the due process of law and to the equal protection of the laws, in violation of 42 U.S.C. § 1983."  Am. Compl. ¶¶ 26, 29. Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress

. . ..

42 U.S.C. § 1983.  A plaintiff must establish three elements to state a cause of action pursuant to 42 U.S.C. § 1983: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under the color of state law."  See, e.g., Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997).  The Court notes at the outset that there is no allegation that HSC is a state actor, or anything other than a private employer.  Regardless of whether Defendant HSC is a "state actor" or not, however, Herman's § 1983 claim against HSC fails, as he fails to properly allege a deprivation of his rights.

In the context of a termination from employment, whether a plaintiff has a constitutional due process protection with respect to an occupation depends on whether the plaintiff possesses a property interest or right in continued employment.  See, e.g., Soles v. City of Raleigh Civil Service Commission, 345 N.C. 443, 446, 480 S.E.2d 685, 687 (1997), citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  The burden of showing that he had such a protectible property interest in his employment lies with the plaintiff.  Id. at 448, 480 S.E.2d at 688.  In North Carolina, when there is no contract establishing a definite term of employment, such employment is terminable at-will by either the employee or the employer.  Tarrant v. Freeway Foods of Greensboro, 163 N.C. App. 504, 508, 593 S.E.2d 808, 811 (2004), citing Kurtzman v. Applied Analytical Industries, Inc., 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). "[A]ssurances of continued employment, permanent employment or employment for life are insufficient to rebut the at-will presumption."  Worley v. Bayer Corp., 154 N.C. App. 743, 572 S.E.2d 874 (2002).  An at-will employment relationship does not create a protectible property interest for purposes of § 1983.  Board of Regents v. Roth, 408 U.S. 564, 577-78 (1972).

Herman's Amended Complaint fails to allege anything other than an at-will employment relationship with HSC.  Herman bears the burden of alleging employment for a definite duration.  See, e.g., Freeman v. Hardee's Food Systems, 3 N.C. App. 435, 438, 165 S.E.2d 39, 41 (1969).  Although Herman makes a conclusory allegation in the Amended Complaint that his "contract" of employment was for a definite term, he fails to allege what the "definite term" was.  Herman alleges that he was scheduled to teach classes at HSC at a certain pay rate.  Am. Compl. ¶ 33.  He also states that he had been promised the opportunity to teach another instructor's courses at a rate of between four thousand and seven thousand dollars per month depending upon the course load.  Id.  Such allegations are insufficient to establish anything other than at-will employment.  Furthermore, the Amended Complaint states that at the time the unfounded complaint against him was filed, Herman had applied to the North Carolina Real Estate Commission for licensure of a new real estate school, of which he "was to be the director and an instructor, enjoying a position of increased responsibility from his position at HSC."  Am. Compl. ¶ 21.  By his own admission, Herman expected to begin work as an instructor at a new real estate school, and therefore he did not have a continued expectation of employment with HSC.  Herman does not maintain that he could simultaneously work both jobs and it is reasonable that he could not be employed as an instructor for competitors in the same industry.  Because Herman has failed to properly allege that he had a constitutionally protected property interest arising from his employment, or continued employment, with HSC, the termination of his employment is not in violation of § 1983.

To state a viable claim for loss of business opportunity, specifically the delayed license, Herman must first "demonstrate that he possesses a 'cognizable property interest rooted in state

law' in the lost benefit." <u>Biser v. Town of Bel Air</u>, 991 F.2d 100, 104 (4th Cir. 1993), <u>citing</u>

<u>Scott v. Greenville County</u>, 716 F.2d 1409, 1418 (4th Cir. 1983).  A property interest, however,

requires "more than a 'unilateral expectation' that a permit or license will be issued; instead,

there must be a 'legitimate claim of entitlement.'"  <u>Id.</u> <u>citing</u> <u>Board of Regents</u>, 408 U.S. at 577.

The court in <u>Biser</u> held that if, in applying this standard of entitlement, "a local agency has 'any

significant discretion' in determining whether a permit should issue, then a claimant has no

legitimate entitlement and, hence, no cognizable property interest."  <u>Id.</u> <u>citing</u> <u>Gardner v.</u>

<u>Baltimore Mayor & City Council</u>, 969 F.2d 63, 68 (4th Cir. 1992).  The Amended Complaint

alleges nothing more than a unilateral expectation that the license would be issued.  Thus,

Herman fails to allege a cognizable property interest in the business opportunity.  Moreover, all

Herman has done is allege that the new school's opening was delayed for an unspecified period.

He fails to allege that the delay actually prevented the school from opening, or that he suffered

any actual loss as a result of the delay.

As for the violation of procedural due process claim, the only allegation coming close to

referencing a procedural violation is found in paragraph 23 of the Amended Complaint which

refers to Lackey issuing an ultimatum to HSC to terminate the contract "prior to the

Commission's regular investigative process."  Am. Compl. ¶ 23.  However, it is not stated what

exactly this process is or whether or not it was actually done and therefore, there is no clear

statement in the Amended Complaint alleging a violation of that process.

Herman also alleges that the Defendants' actions violated his right to equal protection

under the laws.  When a person alleges a violation of their equal protection rights, courts apply

strict scrutiny when "the challenged statute places burdens upon 'suspect classes' of persons or

on a constitutional right that is deemed to be 'fundamental.'" <u>Levy v. Jensen</u>, 285 F. Supp. 2d
710, 714 (4th Cir. 2003), <u>quoting</u> <u>San Antonio Indep. Sch. Dist. v. Rodriquez</u>, 411 U.S. 1, 17
(1973). In this case, Herman is not a member of a suspect class and therefore, this Court applies
rational basis review. Under this review, it is not sufficient for a plaintiff simply to show that
the defendant's *actual* motive was irrational; "rather he must negate 'any reasonably conceivable
state of facts that could provide a rational basis for the classification.'" <u>Kirby v. City of</u>
<u>Elizabeth City</u>, 388 F.3d 440, 447 (4th Cir. 2004) <u>quoting</u> <u>Bd. of Trustees v. Garrett</u>, 531 U.S.
356, 367 (2001). From the face of the Amended Complaint, one can easily hypothesize
"rational" scenarios for Lackey's alleged conduct. One could surmise that Broadway's
allegations raised serious issues about Herman's integrity as a real estate instructor that could
ultimately tarnish the reputation of HSC. Therefore, Lackey, not knowing at the time whether
the allegations were true or false, rationally advised Broadway to make a formal complaint.
Broadway filed the complaint and upon investigation, HSC found reason to believe that Herman
should not teach at HSC any more. Finally, the pending complaint caused a delay in the
licensing of the new school. Although Herman has alleged that Lackey acted maliciously, he has
not alleged (and cannot allege) that there is not even a hypothetical rationale and non-malicious
explanation for Lackey's alleged actions.

Additionally, Herman's "class-of-one" theory must likewise fail. Essentially, a "class-of-
one" plaintiff argues that his situation should receive individualized analysis although he does
not belong to any "suspect" (that is, favored) class. "Class-of-one" is argued under rational basis
review when

a public official, with no conceivable basis for his action other than spite or some

other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen – perhaps the holder of a license from the state to operate a bar or restaurant or other business – depriving him of a valuable property right that identically situated citizens toward whom the official bears no ill will are permitted the unfettered enjoyment of.

Lauth v. McCollum, 424 F.3d 631, 633 (7th Cir. 2005).  Herman argues that these words precisely describe what Lackey did in this case.  However, just as under rational basis review, "class-of-one" equal protection cases require that there be no conceivable rational basis for the defendant's wrongful conduct apart from a malicious motive.  See, e.g., Kirby, 388 F.3d at 447-48; Lauth, 424 F.3d at 634, citing Kirby with approval.  As indicated from the face of the Amended Complaint, at least one non-malicious rationale exists to explain Lackey's conduct.  Therefore, Herman's "class-of-one" theory must also fail.

**C.  Breach of Contract Claim against HSC:**

In Count II, Herman alleges breach of contract between himself and HSC.  The elements of a claim for a breach of contract are (1) a valid contract is in existence and (2) a breach of the terms of that contract.  Bob Timberlake Collection, Inc. V. Edwards, 176 N.C. App. 33, 43, 626 S.E.2d 315, 323 (2006) citing Becker v. Graber Builders, Inc., 149 N.C. App. 787, 792, 561 S.E.2d 905, 909 (2002).  As noted earlier, despite Herman's contention that he had an oral contract of employment for a definite period of time, he failed to specify the terms of that contract or its duration.  The appearance of Herman's name on a class schedule does not create an expectation of continued employment.  As Herman has failed to sufficiently allege the existence of an employment contract with HSC, his breach of contract claim must fail.

**D.  Tortious Interference with Contract Claim against Lackey:**

To have a tortious interference with contract claim in North Carolina the following five

elements must be satisfied: (1) there must be a valid contract between the plaintiff and a third party that gives the plaintiff a contract right against the third party, (2) the defendant must know of the contract; (3) the defendant must intentionally induce the third party not to perform under the contract; (4) the defendant must have acted without justification; and (5) the plaintiff must suffer actual damages as a result. See, e.g., Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc., 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003).

As noted earlier, Herman has failed to allege an employment contract between himself and HSC. However, a tortious interference claim can lie in at-will employment if there is an expectation that the employment would continue but for the defendant's actions. See, e.g., Smith v. Ford Motor Co., 289 N.C. 71, 85, 221 S.E.2d 282, 290-91 (1976). Herman's allegations in the Amended Complaint belie such an expectation. Herman alleges that he applied to the North Carolina Real Estate Commission for licensure of a new real estate school of which he "was to be the director and an instructor, enjoying a position of increased responsibility from his position at HSC." Am. Compl. ¶ 21. Furthermore, he alleges "time was of the essence in the new school's application, owing to an impending change in the state law governing the licensure of real estate brokers that resulted in a spike in demand for courses." Am. Compl. ¶ 25. Thus, by his own admission, Herman expected to begin work as an instructor at a new school, and did not have a continued expectation of employment with HSC. Accordingly, the tortious interference with contract claim must be dismissed.

**E. Tortious Interference with Prospective Economic Advantage against Defendant Lackey:**

In Count IV, Herman alleges Lackey's tortious interference with prospective economic advantage. The elements for this claim are the same as with tortious interference with contract

except that instead of an existing contract, there must be a contract that *would have been entered into* but for the defendant's unjustifiable conduct. See, e.g., Beck v. City of Durham, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002); Cameron v. New Hanover Mem. Hosp., Inc., 58 N.C. App. 414, 439-40, 293 S.E.2d 901, 916-17 (1982), citing Spartan Equip. Co. v. Air Placement Equip. Co., 263 N.C. 549, 140 S.E.2d 3 (1965). The basis of this claim is Herman's allegation in his Amended Complaint that Lackey "used his position as a member of the Commission to induce the Commission to delay the approval of the new school." Am. Compl. ¶ 51. However, Herman fails to make any allegation that the delay actually prevented the school from opening, or that he suffered any actual loss as a result of the delay. Thus Herman's claim for tortious interference with prospective economic advantage must likewise fail.

**F.  Intentional Infliction of Emotional Distress**

Finally, Herman alleges intentional infliction of emotional distress (IIED) against both Lackey and HSC in Count V of his Amended Complaint. In North Carolina, in order to state a claim for IIED, a plaintiff must allege (1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe emotional distress. Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). For conduct to be considered "extreme and outrageous," it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Briggs v. Rosenthal, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985). "Severe emotional distress" is characterized as "any emotional or mental disorder . . . or any other type of severe or disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Waddle v. Sparks, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992).

Herman alleges that Lackey's intentional actions to induce HSC to breach its contract and HSC's termination of Herman subjected him to "severe emotional anguish and distress arising from humiliation and damage to his professional and personal reputation and interference with his ability to earn a living in his profession." Am. Compl. ¶ 56. The allegations of Amended Complaint fail to allege conduct on the part of either Defendant that rises to the level of "extreme and outrageous" conduct sufficient to state a claim for IIED under North Carolina law.

Although Defendant HSC moves to dismiss only Counts I, II and V of the Amended Complaint, and Defendant Broadway fails to file any motion at all, the determination of this Court that the Plaintiff fails to state a claim under which relief can be granted necessarily applies to all Defendants.

IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) are hereby GRANTED and the Amended Complaint is dismissed in its entirety.

Signed: June 7, 2007

Graham C. Mullen
United States District Judge